IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

APRIL L. DeMOSS, )
)
)
Plaintiff, )
)
v. )
) Case No. 12-2763-CM
CAROLYN W. COLVIN, ACTING )
COMMISSIONER OF SOCIAL )
SECURITY, )
)
)
Defendant. )
)

## MEMORANDUM AND ORDER

Plaintiff April L. DeMoss claims that she became unable to work on August 10, 2009, because of the following health issues: (1) bipolar I disorder, mostly hypo manic; (2) panic disorder with agoraphobia; (3) anxiety disorder; (4) obsessive compulsive disorder; and (5) attention deficit disorder—all complicated by bilateral carpal tunnel syndrome, low back pain, right rotator cuff tendinitis, and right knee pain. In the past, plaintiff worked as a customer service representative, food service worker, and telemarketer. She filed this action pursuant to Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401 et seq., and Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Under Title II, plaintiff requests disability insurance benefits. Under Title XVI, plaintiff requests supplemental security income benefits.

An Administrative Law Judge ("ALJ") found that plaintiff was not disabled in a decision dated January 5, 2012, which stands as the final decision of the Commissioner of Social Security. Plaintiff contends that the ALJ erred in a number of ways: (1) the ALJ did not recognize plaintiff's carpal tunnel syndrome as a medically determinable impairment; (2) the ALJ afforded Dr. Gerald Siemsen's

opinion the most weight regarding plaintiff's physical ailments; (3) the ALJ afforded Dr. Robert Schulman's opinion the most weight as to plaintiff's mental impairments; and (4) the ALJ did not meet her burden at Step Five of showing that plaintiff can perform other work that exists in the national economy. After reviewing the record, the court makes the following rulings.

## I.  Legal Standard

This court applies a two-pronged review to the ALJ's decision: (1) Are the factual findings supported by substantial evidence in the record? (2) Did the ALJ apply the correct legal standards? *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "Substantial evidence" is a term of art. It means "more than a mere scintilla" and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter v. Astrue*, 321 F. App'x 789, 792 (10th Cir. 2009) (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)). When evaluating whether the standard has been met, the court is limited; it may neither reweigh the evidence nor replace the ALJ's judgment with its own. *Bellamy v. Massanari*, 29 F. App'x 567, 569 (10th Cir. 2002) (citing *Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995)). On the other hand, the court must examine the entire record—including any evidence that may detract from the decision of the ALJ. *Jaramillo v. Massanari*, 21 F. App'x 792, 794 (10th Cir. 2001) (citing *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994)).

Plaintiff bears the burden of proving disability. *Hunter*, 321 F. App'x at 792. A disability requires an impairment—physical or mental—that causes one to be unable to engage in any substantial gainful activity. *Id*. (quoting *Barnhart v. Walton*, 535 U.S. 212, 217 (2002)). Impairment, as defined under 42 U.S.C. § 423(d)(1)(A), is a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

The ALJ uses a five-step sequential process to evaluate disability claims. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988) (citation omitted). But the ALJ may stop once she makes a disability determination; she does not need to continue through subsequent steps if she is able to find a claimant disabled or not disabled at an intermediate step. *Id*.

The components of the five-step process are:

- **Step One**: The plaintiff must demonstrate that she is not engaged in substantial gainful employment activity. *Id*. If the plaintiff meets this burden, then the ALJ moves to Step Two.
- **Step Two**: The plaintiff must demonstrate that she has a "medically severe impairment or combination of impairments" that severely limits her ability to do work. *Id*. (internal quotation omitted).
    - If the plaintiff's impairments have no more than a minimal effect on her ability to do work, then the ALJ can make a nondisability determination.
    - If plaintiff makes a sufficient showing that her impairments are more than minimal, then the ALJ moves to Step Three.
- **Step Three**: The ALJ compares the impairment to the "listed impairments"—impairments that the Secretary of Health and Human Services recognizes as severe enough to preclude substantial gainful activity. *Id*. at 751.
    - If the impairment(s) match one on the list, then the ALJ makes a disability finding. *Id.*
    - If an impairment is not listed, the ALJ moves to Step Four of the evaluation. *Id*.
- **Prior to Step Four**: The ALJ must assess the plaintiff's RFC. *Baker v. Barnhart*, 84 F. App'x 10, 13 (10th Cir. 2003) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)).
- **Step Four**: The plaintiff must show that she cannot perform her past work. *Williams*, 844 F.2d at 751. If plaintiff shows that she cannot, the ALJ moves to the last step.

- **Step Five**: Here, the burden shifts to the ALJ. The ALJ must show that the plaintiff can perform some work that exists in large numbers in the national economy. *Id*.

## II. Analysis

### A. The Administrative Decision

The ALJ made the following determinations:

- **Step One**: Plaintiff worked after her alleged disability onset date. Her work did not, however, rise to the level of substantial gainful activity.

- **Step Two**: Plaintiff has a mental disorder that is a severe impairment. That disorder has been diagnosed to include bipolar mood disorder, attention deficit disorder, panic disorder, obsessive compulsive disorder traits, and crack cocaine and alcohol abuse disorder in remission.

- **Step Three**: Plaintiff's impairment does not meet or medically equal a "listed impairment."

- **Prior to Step Four**: Plaintiff has the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

  o <u>Climbing</u>: no more than occasionally climb ramps and stairs, but never climb ladders, ropes, and scaffolds

  o <u>Hazardous Conditions</u>: avoid work around concentrated exposure to hazardous conditions, including unprotected heights and hazardous machinery

  o <u>Tasks</u>: must be capable of being learned in thirty days or less, involving no more than simple work-related decisions and few workplace changes

  o <u>Interaction</u>: no more than occasional interaction with the public, coworkers, and supervisors

- **Step Four**: Plaintiff cannot perform her past relevant work.

- **Step Five**: There are jobs that exist in significant numbers in the national economy that plaintiff can perform, including laundry worker, kitchen helper, housekeeper, and folding machine operator.
- **Conclusion**: Plaintiff has not been disabled from August 10, 2009 through January 5, 2012.

## B. Plaintiff's Claims

As mentioned above, plaintiff alleges four overriding errors with the ALJ's decision. The court examines each of these claims below.

### 1. *Carpal Tunnel Syndrome*

Plaintiff first contends that the ALJ should have found that she has a medically determinable impairment of carpal tunnel syndrome. The earlier medical records and reports do not mention carpal tunnel syndrome, but in May 2010, plaintiff began complaining of symptoms consistent with carpal tunnel.

The ALJ acknowledged that someone—presumably a nurse practitioner—stated that plaintiff had carpal tunnel syndrome and referred plaintiff to Dr. Dalenberg at St. Luke's Bone and Joint Center. Dr. Campbell agreed that a consultation with Dr. Dalenberg was appropriate. The nurse practitioner, however, was not an "acceptable medical source." Dr. Dalenberg, who was an "acceptable medical source," diagnosed plaintiff with "probable" bilateral carpal tunnel syndrome. Dr. Dalenberg recommended electrodiagnostic testing, but plaintiff could not pay for the testing. Because plaintiff had no diagnosis of carpal tunnel syndrome by an acceptable medical source, the ALJ found no medically determinable impairment.

Alternatively, the ALJ noted that even if she would find a medically determinable impairment of carpal tunnel syndrome, it would be "non-severe" based on plaintiff's reported activities. When evaluating the severity of plaintiff's symptoms, the ALJ focused on plaintiff's self-reported daily

-5-

activities, which could include on a manic day "'ten loads of laundry, three loads of dishes, on the floor scrubbing direct with a tooth brush,' along with a litany of other manual tasks that would require good continued use of her hands." (R. at 16.) The record includes numerous other references to self-reported activities that require use of plaintiff's hands. But plaintiff contends that she engaged in these activities when she was in a hypo manic or manic state. During these times, she would take actions that could be harmful to her well-being.

Only evidence from an "acceptable medical source" can establish an impairment. 20 C.F.R. §§ 404.1513(a) and 416.913(a); *see also Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007). Evidence from "other sources" may be used to establish the severity of an impairment—just not the existence of the impairment itself. *Id.*; Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("Information from these 'other sources' cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source' for this purpose."). To be severe, a medically determinable impairment (or combination of impairments) must significantly limit one's physical or mental ability to do basic work activities. *See* 20 C.F.R. §§ 404.1520(c); 416.920(c). "[W]hile the showing a claimant must make at step two is *de minimis*, a showing of the mere presence of a condition is not sufficient." *Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (citation omitted).

Here, no acceptable medical source opined that plaintiff has carpal tunnel syndrome. The ALJ applied the correct legal standards in reaching this conclusion. Her decision is also supported by substantial evidence in the record. Likewise supported is the ALJ's alternative notation that if carpal tunnel syndrome were a medically determinable impairment, it would be non-severe. She also used the correct legal standards to make this observation.

To be certain, the record contains evidence suggesting that, by at least May 2010, plaintiff complained of pain that could be consistent with carpal tunnel syndrome. At least one nurse practitioner thought she had it and gave her a referral to do further testing. But Dr. Dalenberg's exam and initial testing only showed "probable" carpal tunnel syndrome, and no further testing was done. And, as the ALJ noted, plaintiff's self-reported activities were inconsistent with a finding that plaintiff's pain caused more than minimal limitations in plaintiff's ability to perform basic work activities. The only way the court could reverse the ALJ's decision on this point would be to reweigh the evidence. This the court cannot do. *Bellamy*, 29 F. App'x at 569 (citing *Kelley*, 62 F.3d at 337).

### 2. *Dr. Siemsen's Opinion*

When considering plaintiff's physical impairments, the ALJ gave Dr. Siemsen's opinion the most weight. Plaintiff claims this is erroneous for several reasons. First, Dr. Siemsen's opinion consists of one sentence: "There is no physical MDI." Second, Dr. Siemsen issued his opinion on October 13, 2010—without the benefit of Dr. Dalenberg's examination and more than a year before the ALJ's decision. Third, plaintiff argues that because Dr. Siemsen was a non-examining, non-treating physician, his opinion should be given the least weight of all. Social Security regulations provide that the ALJ is to give more weight to the opinion of one who has examined the claimant than to one who has not. 20 C.F.R. §§ 404.1527(d)(1); 416.927(d).

Under other circumstances, plaintiff's argument would have more appeal. Dr. Siemsen's opinion is cursory, as is the ALJ's analysis of his opinion. But in this case, these two facts do not equate to reversible error because there is no other opinion from an acceptable medical source against which to weigh Dr. Siemsen's opinion. No acceptable medical source has stated that plaintiff has a medically determinable impairment that is physical (as opposed to mental). Although the record includes evidence suggesting that plaintiff complained of various physical ailments, the ALJ explained

in detail why she found plaintiff's complaints not credible or supported by the record. Plaintiff did not specifically challenge the ALJ's credibility findings in her opening brief, although after the Commissioner characterized plaintiff's challenges as including one to credibility findings, plaintiff did address credibility in her reply brief.

When an ALJ's credibility determinations are supported by substantial evidence, the court will not upset them; they are "peculiarly the province of the finder of fact." *Wilson v. Astrue*, 602 F.3d 1136, 1144 (10th Cir. 2010) (citation omitted). Credibility findings, however, should be more than a bare conclusion. The ALJ should show a close and affirmative link to substantial evidence, setting forth the specific evidence upon which she relies. *Sanders v. Astrue*, 266 F. App'x 767, 770 (10th Cir. 2008) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995); *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)). The ALJ may consider the following when making her credibility determination:

> (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; (5) treatment for relief of the symptoms; (6) measures other than treatment used to relieve the symptoms (e.g. rest); and (7) any other factors.

Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *1 (July 2, 1996). But the ALJ is not required to formally address every factor. *See Poppa v. Astrue*, 569 F.3d 1167, 1171 (10th Cir. 2009) (holding that a credibility finding "does not require a formalistic factor-by-factor recitation of the evidence . . . [s]o long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility") (quotation marks and citation omitted).

Here, the ALJ's determination regarding plaintiff's physical impairments was based largely on her assessment of plaintiff's credibility. She explained her reasoning in detail, dedicating five paragraphs to why she found many of plaintiff's statements about her symptoms to be not credible.

Specifically with respect to plaintiff's physical ailments, the ALJ explained how plaintiff gave inconsistent reports of pain symptoms, she lacked a corroborating diagnosis, and her daily activities contradicted her claims. Relating more to her claims of disabling mental illness, the ALJ discussed inconsistencies between plaintiff's testimony and the medical record, her work activity, and her household responsibilities. The ALJ also noted that although plaintiff blamed her work absences on her impairments, the record revealed that she also was absent at times due to legal difficulties.

In her credibility assessment, the ALJ applied the correct law. Her observations are also supported by substantial evidence. Although her discussion of Dr. Siemsen's opinion is slight, the record contains no other acceptable medical source opinions for comparison. And although Dr. Siemsen issued the opinion without the benefit of Dr. Dalenberg's "diagnosis," the court has already indicated above why Dr. Dalenberg's records do not require the finding that carpal tunnel syndrome was a medically determinable impairment. The court therefore determines that the ALJ's analysis should be upheld.

### 3. *Dr. Schulman's Opinion*

Next, plaintiff argues that the ALJ improperly gave the most weight to Dr. Schulman's opinion about plaintiff's mental impairment, when plaintiff's "treating mental health source"—Chris McCollough—offered a contrary opinion. McCollough is an ARNP (Advanced Registered Nurse Practitioner), BC (Board Certified), MS (Master of Science). Dr. Schulman, Ph.D., state agency reviewing psychologist, did not examine plaintiff. Also, he issued his opinion on April 2, 2010. This was more than a year before the ALJ issued her decision on January 5, 2012, and did not include plaintiff's last year of medical treatment. McCollough's opinion, on the other hand, was issued on July 25, 2011.

The ALJ offered several reasons why she gave McCollough's opinions little weight. First, she observed that although McCollough was not an "acceptable medical source," his opinion was entitled to some consideration. The ALJ found McCollough's notation that plaintiff had been disabled since the 1990s inconsistent with plaintiff's work record. She further found McCollough's opinion inconsistent with plaintiff's Global Assessment of Functioning ("GAF") scores and too reliant on plaintiff's subjective complaints.

The court finds no error here with the ALJ's application of the law. Contrary to plaintiff's characterization of McCollough, as a nurse practitioner, McCollough was not a "treating medical source" in the technical way the regulations use the term "treating source." *See* 20 C.F.R. § 416.902 ("Treating source means [a claimant's] physician, psychologist, or other acceptable medical source . . . ."); *id.* § 416.913(d)(1) (listing nurse practitioners among medical sources who are not "acceptable medical sources"). Nevertheless, the ALJ considered McCollough's opinion and explained in detail why she discounted it. This is in accord with the law. *See* Soc. Sec. Ruling 06-3 ("[Medical source] opinions should be evaluated using the regulatory factors for evaluating medical opinions.") (citing 20 C.F.R. §§ 404.1527, 416.927). The ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.*; *see also Frantz*, 509 F.3d at 1300 (remanding for consideration of a nurse-practitioner's opinion in light of Soc. Sec. Ruling 06–3p).

Further, the ALJ's decision is supported by substantial evidence in the record. She pointed out the inconsistencies between McCollough's findings and the record. And she gave specific, rational reasons for her decision. *See Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (providing that the ALJ must give "specific, legitimate reasons" for rejecting an opinion) (citation omitted). The

-10-

regulations provide that "after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." Soc. Sec. Ruling 06-3p, 2006 WL 2329939, at *5. But this outcome is not required. As long as the ALJ supports her reasoning and such reasoning is in turn supported by substantial evidence, she may give the opinion of a non-examining acceptable medical source more weight.

Moreover, the fact that Dr. Schulman issued his opinion more than a year before the ALJ's decision is inconsequential. Plaintiff has not suggested that her mental condition changed after Dr. Schulman issued his report. *See generally Lee v. Colvin*, No. 12-2259-SAC, 2013 WL 4549211, at *3–4 (D. Kan. Aug. 28, 2013) ("Plaintiff fails to show that the degree, frequency, or seriousness of any medical condition had materially changed since the medical opinions were given. Accordingly, the challenged medical opinions were not rendered outdated by any passage of time or by any intervening change in medical condition such that the ALJ should have discounted them.").

Finally, plaintiff argues that the ALJ only mentioned the GAF scores that were consistent with her outcome—scores above 50. Plaintiff contends that there are three GAF scores of 48 (unmentioned by the ALJ), which suggest disability. *See Oslin v. Barnhart*, 69 F. App'x 942, 947 (10th Cir. 2003) (noting that "GAF scores of 50 or less do suggest an inability to keep a job"). In reviewing the record, the court found GAF scores mentioned or assigned at least thirteen times. Three of those times, plaintiff's score was specified as 48. But of those three times, there only appear to be two "diagnosis dates": August 21, 2008 (before plaintiff's alleged disability onset date) and March 4, 2010. All other GAF scores ranged from 54 to 65. The ALJ is not required to discuss every piece of evidence in the record, *see Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996), and the unmentioned GAF scores are of limited and questionable probative value. The ALJ may not ignore "significantly

probative" evidence that undercuts her decision, but the GAF scores of 48 do not qualify as "significantly probative" in this instance.

Again, to reverse on this basis would require the court to reweigh the evidence. The ALJ's decision is supported by substantial evidence, and the court finds no error in the ALJ's decision to give Dr. Schulman's opinion more weight than McCollough's.

### *4. Step Five – Other Work in the National Economy*

At Step Five, plaintiff contends that the ALJ erred because plaintiff cannot perform the job of laundry worker, which requires the performance of a variety of duties and the ability to make judgments and decisions. The ALJ specified that plaintiff was limited to simple work-related decisions and few workplace changes. Defendant leaves this argument unchallenged. It appears to the court that plaintiff could be correct; with the given limitations, plaintiff may not be able to perform the job of laundry worker. But even if this argument is conceded, the case need not be remanded because the ALJ also identified a number of other jobs that plaintiff would be able to do.

Plaintiff challenges the other jobs because they require manual tasks of reaching and handling that plaintiff cannot do because of her carpal tunnel syndrome and right rotator cuff tendonitis. But, as explained throughout this opinion, the ALJ determined that plaintiff did not have any physical medically determinable impairments. The ALJ was therefore not required to include limitations in the RFC related to plaintiff's claims of carpal tunnel syndrome and right rotator cuff tendonitis. *See* Soc. Sec. Ruling 96–8p, 1996 WL 374184, at *5 (July 2, 1996) ("The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms.").

### III. Conclusion

Based on the above analysis, the court affirms the Commissioner's decision.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is affirmed.

Dated this 18th day of December, 2013, at Kansas City, Kansas.

                                                s/ Carlos Murguia
                                                **CARLOS MURGUIA**
                                                **United States District Judge**